# SETTLEMENT AGREEMENT

This Settlement Agreement is between Plaintiff Jazmine Walters ("Walters"), individually and on behalf of all members of the Settlement Group as defined herein, and Saddle Peak, LLC, d/b/a Hardee's ("Saddle Peak") (collectively, Walters, members of the Settlement Group and Saddle Peak will be referred to as the "Parties"). Walters and the Settlement Group are represented by Josh Sanford and Steve Rauls of Sanford Law Firm, PLLC ("Group Counsel").

Walters commenced this action against Saddle Peak in the United States District Court for the Eastern District of Arkansas on May 25, 2018 *Walters v. Saddle Peak*, No. 4:18-cv-BSM ("Lawsuit"). Walters asserts claims under the Fair Labor Standards Act ("FLSA") and the Arkansas Minimum Wage Act ("AMWA"). Saddle Peak has answered the Complaint filed in the Lawsuit. Saddle Peak denies liability, opposes the certification of any class or collective action, and affirmatively states that Saddle Peak has complied with the relevant provisions of the FLSA and the AMWA.

Nevertheless, recognizing the uncertainty and expense of litigation, the Parties agree to settle the FLSA and AMWA wage and hour claims individually and on behalf of the Settlement Group as follows:

1.      **Pleadings and Certification**: The Parties stipulate to conditional certification under the FLSA of the following individuals (the "Settlement Group"):

> All individuals Saddle Peak, LLC, d/b/a Hardee's hired from outside its organization to become general managers of store locations in Arkansas between September 7, 2015, and the date of execution of this Settlement Agreement.

Stipulation to the above-described Settlement Group is for purposes of settlement only and is not an admission that certification is proper under the FLSA, Rule 23 of the Federal Rules of Civil Procedure, or any state law equivalent. If for any reason this Settlement Agreement is not approved by the Court or is terminated, all stipulations in this Settlement Agreement will be void and null, inadmissible in a court proceeding, and will have no effect on the Lawsuit or on any claims brought based on the same or similar allegations.

2.      **Scope of Release for Walters**. Walters, on behalf of herself, and all persons who could claim by, through, or under her, does hereby fully, finally and forever release and discharge Saddle Peak, together with its parents, subsidiaries, affiliates and all of their officers, directors, shareholders, owners, employees, benefit plans, representatives, insurers, attorneys and agents (hereafter referred to collectively as "Releasees") from any and all liabilities, charges, claims, demands, actions, lawsuits or causes of action, of any kind and every nature whatsoever, known or unknown, which Walters has or may have against Releasees, including any claims

1

EXHIBIT 1

growing out of or arising from or relating to Walters employment with Saddle Peak, the termination of that employment or any other matter to the date of the execution of this Settlement Agreement. This general release and waiver shall include claims brought under any theory of law or equity, under the common law or under any federal, state or local law, statute, rule, regulation, or ordinance, including specifically, but not limited to, the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, as amended; any title of the Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e, *et seq.*, as amended; the Civil Rights Act of 1991; the Civil Rights Act of 1866 (42 U.S.C. §§ 1981, 1981A, 1983, 1985, 1986 and 1988); the Arkansas Civil Rights Act of 1993, A.C.A. §16-123-101 *et seq.*; the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.;* the Equal Pay Act, 29 U.S.C. § 215(d)(1); the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.*; the Americans with Disabilities Act, as amended, 42 U.S.C. §12101 *et seq.;* any city or county ordinance; the National Labor Relations Act, as amended, 29 U.S.C. § 151 *et seq.;* the Family and Medical Leave Act, as amended, 29 U.S.C. 2601 *et seq.*; Occupational Safety and Health Act of 1970, § 29 U.S.C. 651 *et seq.*; or the False Claims Act (including the *qui tam* provision thereof). Furthermore, and without in any way limiting the foregoing, the claims waived and released by Walters include any and all tort claims, any and all contract claims, any and all claims for alleged deprivation of rights, and any alleged violations of other statutory rights.

3.    **Scope of Release as to Settling Plaintiffs**. Members of the Settlement Group other than Walters who timely negotiate his or her settlement check within ninety (90) days of mailing or sixty (60) days of reissue in the case of lost or damaged checks will be deemed to have opted in to this Lawsuit, if they have not already (the "Settling Plaintiffs"). The Settling Plaintiffs fully release and discharge Saddle Peak, and all of its controlling persons, subsidiaries, affiliates, directors, officers, agents, employees, and benefit plans sponsored by any such entities, of all wage and hour claims asserted in this Lawsuit, as well as other claims (both known and unknown) under federal statutory law, state statutory law, or common law concerning minimum wage or wages, hours of work, pay for hours work, exempt status, and payroll practices related to all hours worked through the date of execution of this Settlement Agreement.

4.    **Settlement Amount**. As consideration, Saddle Peak agrees to pay the total sum of $27,355.77, to be allocated as follows:

4.1    The total sum of $14,355.77 to potential members of the Settlement Group as described below in Section 5;

4.2    The total sum of $13,000 to Group Counsel for attorneys' fees, costs, and expenses related to this Lawsuit.

5.    **Settlement Payments**. The Settlement Group will receive individual payments as follows:

5.1     The Parties have agreed to pay each potential member of the Settlement Group the amount of unpaid overtime the potential member of the Settlement Group allegedly earned assuming the potential Settlement Group Member worked 7.6 overtime hours per workweek for a ten (10) week training period during which the potential Settlement Group member was allegedly misclassified as exempt.

5.2     The Parties have identified 17 potential members of the Settlement Group. The amounts to be paid to each potential member are set forth in Exhibit 1 which is incorporated herein.

5.3     Within fifteen (15) days after entry of a court order approving this Settlement Agreement, Saddle Peak will send to Group Counsel settlement payment checks made payable to the following potential members of the Settlement Group: Jazmine Walters, Paul Burrow, Kaylee Strong, Diana Cespedes, Kara Bennett, and Robin McMillan, together with their last known addresses (the "First Payment").

5.4     Within forty-five (45) days after sending the First Payment, Saddle Peak will send to Group Counsel settlement payment checks made payable to the following potential members of the Settlement Group: Andrew Calloway, Shane McFarland, Vicky Harvison, Kristen Duncan, Andrew Muniz, Kellye Hix, Charles Lyons, David Wilson, Jessica Wilson, Garrett Wilson, and Thomas Jeffrey Williams, together with their last known addresses (the "Second Payment").

5.5     The settlement payment checks made payable to the potential members of the Settlement Group referenced in Subsections 5.3 and 5.4 will be the amount of the settlement for each group member less applicable taxes and withholdings (for example, applicable federal, state, municipal, local taxes, FICA, Social Security, Medicare, and other employee payroll deductions and withholdings required by law).

5.6     The payments to potential members of the Settlement Group are for all wage and hour claims, including any claims for interest and liquidated damages.

5.7     Each individual payment to potential members of the Settlement Group constitutes wages subject to W-2 reporting and normal withholdings.

5.8     Within forty-five (45) days after sending the Second Payment, Saddle Peak will send a check to Group Counsel made payable to the Sanford Law Firm, PLLC in the amount of $13,000, which represents attorneys' fees, costs, and expenses associated with this Lawsuit.

5.9     Potential members of the Settlement Group must negotiate their settlement payment check within ninety (90) days (the "Settlement Deadline") of mailing by Group Counsel.    Failure to negotiate the check by the Settlement Deadline, unless the settlement

payment check is lost or damaged and the individual has notified Group Counsel within ninety (90) days of mailing by Group Counsel, will result in the check being null and void.

        5.10    Saddle Peak will reissue and send Group Counsel, at no cost, any lost or damaged settlement payment check if Group Counsel has been notified of the lost or damaged settlement payment check within ninety (90) days of its mailing by Group Counsel. The reissued settlement payment check will be null and void if it is not negotiated within 60 days of its mailing by Group Counsel.

        5.11    No party to this Settlement Agreement will bear any liability for any unauthorized negotiation of settlement checks.

        6.      **Attorneys' Fees and Costs**. Saddle Peak stipulates to the Court appointing Josh Sanford and Steve Rauls of Sanford Law Firm, PLLC as Group Counsel. The Parties agree that $13,000 is a reasonable award to cover all work performed by Group Counsel and all costs and expenses incurred in connection with this Lawsuit, including without limitation all work performed and all costs incurred to date, and all work to be performed and costs to be incurred in connection with delivering notification and payments to potential members of the Settlement Group and obtaining the Court's approval of this Settlement Agreement, which will be reported on an IRS Form 1099.

        7.      **Approval Deadlines**. After this Settlement Agreement is fully executed, Saddle Peak will draft a Joint Motion to Dismiss with Prejudice and for Approval of Settlement Agreement ("Joint Motion") and deliver it to Group Counsel. Group Counsel will provide any edits or revisions. It is the intent of the Parties to file the Joint Motion with the Court on or before September 21, 2018. Upon approval of the Settlement Agreement by the Court the Lawsuit will be dismissed with prejudice. In the event that the Parties are unprepared to file the Joint Motion on September 21, 2018, Group Counsel will agree to an Unopposed Motion for Extension of Time to Respond to Plaintiffs' Motion for Conditional Certification of a Collective Action.

        8.      **Notification**. Following a court order approving the Settlement Agreement, the potential members of the Settlement Group will be notified as follows:

        8.1    Within fourteen (14) days of receiving the individual settlement payment checks, Group Counsel will mail (or send to any forwarding address provided) the Notice of Settlement to the potential members of the Settlement Group.

        8.2    The Notice of Settlement will contain each potential member of the Settlement Group's settlement payment check and information about how opting in to the Settlement Group will affect a member's legal rights. Specifically, the Notice of Settlement will state that the settlement payment check represents a settlement of a claim for alleged unpaid

wages. The Notice of Settlement will also clearly state that by negotiating the check, the recipient is accepting it as satisfaction of all alleged unpaid wages earned as an employee of Saddle Peak, d/b/a Hardee's, through the date of execution of this Settlement Agreement. Any group member who does not negotiate check will be excluded from the Settlement Group, retains his or her claims based on unpaid wages earned during the relevant time period, and the amount of the check reverts back to Saddle Peak.

8.3     Group Counsel will use its best efforts to track any potential member of the Settlement Group's mailing returned as undeliverable and will resend the Notice of Settlement promptly upon identifying an updated mailing address.

9.     **Non-Admission of Liability**.   Nothing in this Settlement Agreement or the Notice of Settlement shall operate or be construed as an admission of liability or that class certification is otherwise appropriate. The Parties have entered into this Settlement Agreement to avoid the burden and expense of future litigation. Pursuant to Federal Rule of Evidence 408 and the applicable laws and rules of Arkansas, this Settlement Agreement is inadmissible in any proceeding, except a proceeding to approve, interpret, or enforce the Settlement Agreement. In the event the Settlement Agreement is not approved by the Court, the Parties agree that the Settlement Agreement is void, but remains subject to Rule 408 of the Federal Rules of Evidence. The Parties agree not to disclose the terms of this Settlement Agreement, other than as required to effectuate the Settlement Agreement or as otherwise required by law.

10.     **Modifications**.  The Parties may not waive, amend, or modify any provision of this Settlement Agreement except by a written agreement signed by all of the Parties and subject to any necessary Court approval. A waiver or amendment of any provision of this Settlement Agreement will not constitute a waiver of any other provision.

11.     **Assistance to Third Parties.**   Walters acknowledges and agrees that, absent compulsion of court order or other legal requirement, she will not directly or indirectly assist any nongovernmental third party or other nongovernmental entity in maintaining, proceeding upon, or litigating any claim related or similar to the claims raised in the Lawsuit. If Walters is required under court process or law to give testimony or to produce information, she agrees to timely notify Saddle Peak prior to such disclosure or production.

12.     **Confidentiality.**       Notwithstanding whether the terms of this Settlement Agreement are disclosed to the Court, Walters **agrees that neither she, nor anyone on her behalf will, in any manner, publish, inform, disclose, or discuss with any person or in any other forum any of the terms or conditions of this Settlement Agreement and/or the amount paid in settlement of her claims, unless compelled to do so by order of a court of competent jurisdiction or lawfully issued subpoena.** Walters understands that she is bound by this confidentiality provision going forward, and in response to any inquiry will only say that

5

"the matter has been resolved," or words to that effect. If Walters should be required by order or subpoena to make disclosures which would otherwise be prohibited under this Agreement, she must notify Kathlyn Graves or Nathan Read, at Mitchell, Williams, Selig, Gates and Woodyard, PLLC, within five days of receipt of the subpoena or order. Walters may disclose the terms of this Agreement if reasonably necessary with respect to completing required federal, state or local tax returns to account for the monies paid pursuant to this Agreement or in response to an Internal Revenue Service or other audit or other inquiry relating to such monies, as well as to her legal or tax advisor(s). This confidentiality provision is a material provision of this Settlement Agreement and any breach thereof constitutes a material breach of this Settlement Agreement. If at any time after the execution of this Settlement Agreement Saddle Peak establishes that Walters has violated its terms, including breach of the confidentiality provision set forth in this Section, Saddle Peak shall have the right to recover damages, an injunction restraining further violations, and any and all other available relief. This Section shall be liberally construed to effect its purpose of assuring maximum permissible confidentiality of this Settlement Agreement, which shall be deemed to be of the essence of this Settlement Agreement.

13.    Acknowledgment.    Walters acknowledges that she has carefully read and understands this Settlement Agreement and agrees that Saddle Peak has made no representations other than those contained herein. Walters also acknowledges that she enters into this Settlement Agreement voluntarily, without any pressure or coercion with full knowledge of this significance. Walters understands that this Settlement Agreement constitutes a full and absolute settlement and bar as to any and all claims she had, has or may have against Saddle Peak. Walters further acknowledges that she was represented by counsel who had the opportunity to negotiate regarding the terms of this Agreement.

14.    **Notices**.    All notices, demands, and other communications to be provided concerning this Settlement Agreement shall be in writing and delivered by e-mail at the addresses set forth below, or such other addresses as the Parties may designate in writing from time to time:

| | |
|---|---|
| To Saddle Peak, LLC, d/b/a Hardee's: | Kathlyn Graves<br>kgraves@mwlaw.com<br>Nathan Read<br>nread@mwlaw.com |
| To Group Counsel: | Josh Sanford<br>josh@sandfordlawfirm.com<br>Steve Rauls<br>steve@sandfordlawfirm.com |

15.    **Entire Agreement**. This Settlement Agreement contains the entire agreement between the Parties with respect to the transactions contemplated in the Settlement Agreement

and supersedes all negotiations, presentations, warranties, commitments, offers, contracts, and writings prior to the date of the Settlement Agreement relating to the subject matters of the Settlement Agreement.

16.    **Governing Law.**    This Agreement shall be governed by and construed in accordance with the laws of the State of Arkansas.

17.    **Counterparts**.    This Settlement Agreement may be executed by one or more of the Parties or any number of separate counterparts and delivered electronically and all of these counterparts taken together shall be deemed to constitute one and the same instrument.

**I ATTEST THAT I HAVE READ THIS AGREEMENT AND THAT I UNDERSTAND THAT THIS AGREEMENT INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS I HAVE OR MAY HAVE AGAINST SADDLE PEAK.**

**Settlement Group**

Jazmine Walters, Individually and As
Settlement Group Representative

Date:    9/21/2018

**Saddle Peak, LLC d/b/a Hardee's**

By:

Its:

Date:

7

and supersedes all negotiations, presentations, warranties, commitments, offers, contracts, and writings prior to the date of the Settlement Agreement relating to the subject matters of the Settlement Agreement.

16.   **Governing Law.**   This Agreement shall be governed by and construed in accordance with the laws of the State of Arkansas.

17.   **Counterparts.**   This Settlement Agreement may be executed by one or more of the Parties or any number of separate counterparts and delivered electronically and all of these counterparts taken together shall be deemed to constitute one and the same instrument.

**I ATTEST THAT I HAVE READ THIS AGREEMENT AND THAT I UNDERSTAND THAT THIS AGREEMENT INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS I HAVE OR MAY HAVE AGAINST SADDLE PEAK.**

**Settlement Group**                    **Saddle Peak, LLC d/b/a Hardee's**


By:

Jazmine Walters, Individually and As
Settlement Group Representative         Its:   PRESIDENT + CEO

Date:

                                        Date:   9/21/18

7

| First Name | Last Name | Hire Date | Salary | Regular Rate | Half Time | Hours | Week | Settlement Share |
|---|---|---|---|---|---|---|---|---|
| PAUL | BURROW | 12/14/2016 | 45,000.00 | 17.31 | 8.65 | 7.6 | 10 | $ 657.40 |
| KAYLEE | STRONG | 11/8/2016 | 48,000.00 | 18.46 | 9.23 | 7.6 | 10 | $ 701.48 |
| DIANA | CESPEDES | 8/2/2016 | 47,500.00 | 18.27 | 9.13 | 7.6 | 10 | $ 693.88 |
| KARA | BENNETT | 6/28/2016 | 35,000.00 | 13.46 | 6.73 | 7.6 | 10 | $ 511.48 |
| ROBIN | MCMILLAN | 8/29/2017 | 52,000.00 | 20 | 10 | 7.6 | 10 | $ 760.00 |
| ANDRE | CALLOWAY | 2/2/2017 | 50,000.00 | 19.23 | 9.62 | 7.6 | 10 | $ 731.12 |
| SHANE | MCFARLAND | 1/17/2017 | 45,000.00 | 17.31 | 8.65 | 7.6 | 10 | $ 657.40 |
| VICKY | HARVISON | 11/29/2016 | 45,000.00 | 17.31 | 8.65 | 7.6 | 10 | $ 657.40 |
| JAZMINE | WALTERS* | 10/24/2017 | 54,000.00 | 20.77 | 10.38 | 7.6 | 10 | $ 4,234.85 |
| KRISTEN | DUNCAN | 11/1/2016 | 37,000.00 | 14.23 | 7.12 | 7.6 | 10 | $ 541.12 |
| Andrew | Muniz | 5/3/2016 | 35,000.00 | 13.46 | 6.73 | 7.6 | 10 | $ 511.48 |
| Kellye | Hix | 3/9/2016 | 38,000.00 | 14.62 | 7.31 | 7.6 | 10 | $ 555.56 |
| Charles | Lyons | 4/20/2016 | 50,000.00 | 19.23 | 9.62 | 7.6 | 10 | $ 731.12 |
| David | Wilson | 5/2/2016 | 45,000.00 | 17.31 | 8.65 | 7.6 | 10 | $ 657.40 |
| Jessica | Wilson | 2/12/2016 | 35,000.00 | 13.46 | 6.73 | 7.6 | 10 | $ 511.48 |
| Garrett | Wilson | 3/8/2016 | 35,000.00 | 13.46 | 6.73 | 7.6 | 10 | $ 511.48 |
| Thomas Jeffrey | Williams | 1/6/2016 | 50,000.00 | 19.23 | 9.62 | 7.6 | 10 | $ 731.12 |
| *Jazmine Walters' settlement share includes a service payment of $3,445.97 | | | | | | | | $ 14,355.77 |

Exhibit 1
to Settlement Agreement